44 So.2d 423 (1950)
PETERSON
v.
CITY COMMISSION, CITY OF JACKSONVILLE et al.
Supreme Court of Florida, en Banc.
February 7, 1950.
Rehearing Denied March 8, 1950.
L. Page Haddock, Jacksonville, for appellant.
Marks, Gray, Yates & Conroy, Jacksonville, for appellees.
*424 PER CURIAM.
The judgment appealed from is affirmed on authority of City of Tallahassee v. Roberts, 155 Fla. 815, 21 So.2d 712, and similar cases.
ADAMS, C.J., and TERRELL, THOMAS, HOBSON and ROBERTS, JJ., concur.
CHAPMAN, J., and REGISTER, Associate Justice, dissent.
CHAPMAN, Justice (dissenting).
This is a workmen's compensation case. It was submitted to the Florida Industrial Commission and to the Court below upon stipulation of counsel and pertinent portions thereof are viz.:
"1. That Employee was injured on or about February 4, 1948, while acting within the scope of his employment with Employer; that as a direct result of said injury Employee was required to have an operation performed on his left knee; that Employee's medical history reveals no injury to said knee prior to February 4, 1948; that as a further result of said injury Employee was caused to lose considerable time from his employment with Employer and he became obligated to pay, or have someone on his behalf, pay divers sums of money for hospital, medical, and doctors' bills, as shown by bill of particulars attached hereto and made a part hereof.
"2. That at the time Employee received the injury as aforesaid his salary from Employer was $212.16 per month.
"3. That at the time Employee received said injury he was starting to clean or change a burner on a boiler belonging to Employer and located in Employer's main plant; that said burner is approximately 10 inches above the floor level and in order to clean or change same, it is necessary to squat down to a deep-knee bend position; that at said time and place Employee squatted to a deep-knee bend position to clean or change the burner and when he did his left knee snapped; that there was no noticeable pain at that time but it was necessary for Employee to resume a standing position immediately and when he did so his left knee snapped again accompanied by pain in his knee; that the incident was called to the attention of the Chief Engineer of Employer but Employee continued to work since it did not seem to be a serious injury at the time and it was not necessary for Employee to clean or change the burner again for several days; that Employee was compelled to favor his knee thereafter and when it was necessary to change the burner on the third day after the injury he attempted to squat down for that purpose and his left knee again snapped and on this occasion his knee showed signs of being swollen; Employee was thereupon sent by Employer to Dr. John H. Mitchell, who treated him on several occasions and permitted him to perform light duties with instructions not to climb around boilers or to squat down; Employee continued to have trouble with his knee and he asked that he be sent to another doctor and he was thereupon sent by Employer to Dr. John F. Lovejoy, who later performed an operation on Employee's knee; that the nature of the operation was excision of the medial meniscus of the left knee or removal of internal cartilage of the left knee joint; that this type of injury is usually caused from some sudden stress thrown upon the joint of the knee, or by a sudden twist of the knee or leg while the knee is bent; that the knee is usually in a bent position when the injury occurs and an attempt to straighten the leg after the injury causes severe pain; that Employee had cleaned said burner on numerous occasions prior to the date of his aforesaid injury and on those occasions Employee performed his duty similar to the manner he was attempting on the date of his injury except that on those occasions he received no injury.
"4. That the only question to be determined by the Commission is whether or not an accident occurred within the meaning of the Florida Workmen's Compensation Law: that in the event the Commission is of the opinion that an accident did occur the Insurer will pay all benefits to which Employee is entitled under the provisions of the Workmen's Compensation Law, as shown on attached Bill of Particulars, including a reasonable attorney's fee for Employee's attorney, without further evidence being *425 submitted of time lost from work, medical hospital, or doctors' bills; this agreement shall not prevent either party to this cause from presenting further evidence in the event the Commission or the Deputy Commissioner deems it advisable or necessary for the proper disposition of this claim."
Our adjudications and statutes must be considered and applied to the facts set out in the above stipulation of counsel of record. These provisions are viz.: Subsections (6), (18) and (19) of Section 440.02, F.S.A.:
"(6) The term `injury' means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury.
"(18) The term `time of injury' means the time of the occurrence of the accident resulting in the injury.
"(19) `Accident' shall mean only an unexpected or unusual event, happening suddenly. A mental or nervous injury due to fright or excitement only or disability or death due to the accidental acceleration or aggravation of a veneral disease or of a disease due to the habitual use of alcohol or narcotic drugs, shall be deemed not to be an injury by accident arising out of the employment. Where a preexisting disease is accelerated or aggravated by an accident arising out of and in the course of the employment, only acceleration of death or the acceleration or aggravation of disability reasonably attributable to the accident shall be compensable."
We have for decision here the question of whether or not the claimant's injury occurred in the course of his employment; If so, was the alleged injury an accident within the meaning of Florida's Workmen's Compensation Law? The stipulation admits that the claimant was injured on February 4, 1948, "while acting within the scope of his employment with Employer". It further recites that the claimant was injured when he started "to clean or change a burner on a boiler". The burner was located about ten inches above the floor level and in cleaning the same it was necessary "to squat down to a deep-knee bend position"; that at the time and place claimant "squatted to a deep-knee bend position to clean or change the burner and when he did his left knee snapped". On the third day after the injury he attempted to squat in changing the burner and his "left knee again snapped * * *" "and his left knee at the time disclosed signs of being swollen". "That this type of injury is usually caused from some sudden stress thrown upon the joint of the knee or by a sudden twist of the knee or leg while the knee is bent; that the knee is usually in a bent position when the injury occurs and an attempt to straighten the leg after the injury causes severe pain". The claimant performed this duty on prior occasions to the date of injury and received no injury.
We have construed Subsections (6) and (19) of Section 440.02, F.S.A., as the same applies to hernia as defined in the Workmen's Compensation Act. See The Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790, and General Properties Co., Inc., v. Greening, 154 Fla. 814, 18 So.2d 908. In the case of Cleary Bros. Construction Co. v. Nobles, 156 Fla. 408, 23 So.2d 525, we construed Subsection (19) of Section 440.02, supra. The claimant had an enlarged heart and likewise suffered from a kidney disease for a long period of time prior to his death and we held that his employment did not accelerate either of these diseases or cause claimant's death. It was never the intention of the Legislature in the enactment of our Workmen's Compensation Act that the benefits thereof should be equivalent to the broad terms or provisions of policies of health or accident insurance, but our Act should be liberally construed in behalf of the claimant so as to effectuate the intention and purpose of the Act. Cases are cited to support the contention that an injury must be caused by an accident in order to make it compensable.
As to the contention that an injury must be caused by an accident the Court of Appeals of the State of Georgia, in the case of Brown v. Lumbermen's Mut. Casualty Co., 49 Ga. App. 99, 174 S.E. 359, had before it facts substantially viz.: The claimant was employed by the defendant as a laborer and while standing on a scaffold *426 wrecking pans, leaned over to pick up a tool on the scaffold, and something happened to his knee which caused him to suffer pain when walking, although medical attention was not had thereafter for a period of ten days. On the question of accidents, our Compensation Act is similar to that of Georgia. The Court said an injury received while in the course of employment and in the performance of an act connected with the employment, which injury is unexpected and which may proceed from an unknown cause, or is the unusual effect of a known cause, is an injury caused by an accident, which is compensable. The great weight of authorities from other States support this view. If the occurrence is sudden, unexpected and undesigned by the workman, it comes within the provisions of the Act. Compensation was sustained by the Georgia Court.
58 Am.Jur. 756-757, par. 255, states the rule thusly: "Sec. 255. Strain or Rupture; Hernia, Hemorrhage, Apoplexy, Heart Trouble, Paralysis, etc.  By the weight of authority, the sudden and unexpected breaking of some portion of the internal structure of the body, as in the case of cerebral hemorrhage, apoplexy, hernia, etc., or the failure of some essential function thereof, as in the case of heart failure, paralysis, and similar afflictions, brought about by the exertions of the employee while engaged in the performance of his duties, or by the conditions of the employment, even without any external happening of an accidental nature, is to be regarded as an accidental injury within the meaning of the terms `injury by accident', `injury proximately caused by accident', `personal injury accidentally sustained', and similar expressions, as used in compensation statutes, as well as a simple personal injury, although there are holdings to the contrary. * * * It is said, in this connection, that an internal injury which is sudden, unusual, and unexpected is none the less accidental because its external cause is part of the victim's ordinary work. And the general rule has been held applicable where such affliction results from blood pressure intensified by vigorous muscular activity, while the employee is performing his work in the usual manner, without any extraordinary effort. It is essentially applicable where the disablement or affliction is due to extraordinary effort or overexertion. * * *"
Falls v. Tennessee Furniture Co., 122 Pa. Super. 550, 186 A. 272, 277, is a compensation case. The claimant unloaded some refrigerators for his employer and then drove some twenty blocks and became sick and complained of pains in his stomach. He was unable to eat and went to bed. Shortly thereafter he entered a hospital and died about three days after lifting the refrigerators of general peritonitis resulting from the rupture of a gastric ulcer. It was contended that the record failed to disclose an injury of the claimant prior to the accident. The court held that an accident is an unusual event which occurs unexpectedly or an event which happens suddenly. An injury by accident may occur in the course of the normal duties of an employee and without overexertion, when a strain, sprain or twist causes a break or sudden change in the physical structure or tissues of the body; and the fact that the employee had an inherent defect or a chronic condition, which rendered him more susceptible to such injury than an ordinary person would have been, will not defeat the right to compensation.
The strain on the knee of the claimant "while squatted to a deep-knee position to clean or change the burner * * * when his left knee snapped", was an accident within the meaning of Subsection (19) of Section 440.02, F.S.A., which is defined to mean something "unexpected or an unusual event, happening suddenly." The claimant's employment supra required the strain on his knee and such exertion, unexpectedly and suddenly, caused the injury. The word "accident", as used in statutes of other jurisdictions similar in many respects to ours, has been carefully treated by Schneider on Workmen's Compensation Law, Vol. 1, 2d Ed., 505-516, par. 135.
It is contended in the case at bar that the ruling of the court below should be sustained here on authority of City of Tallahassee v. Roberts, 155 Fla. 815, 21 So.2d 712. Our answer is that a factual distinction exists *427 between the two cases. In City of Tallahassee v. Roberts, the claimant consulted a physician on October 4, 1943, for the identical ailment, two days prior to the accident complained of. In other words, his ailment existed prior to October 6, 1943, when he answered the fire alarm as a fireman. His alleged injury never occurred during the course of his employment for the City of Tallahassee. It is admitted by the stipulation before us that the claimant, Peterson, was injured "on or about February 4, 1948, while acting within the scope of his employment". The injury was unexpected and happened suddenly. It is my conclusion, based upon the applicable law and the stipulation of facts appearing in the record, that the injury and accident complained of is compensable.
I would reverse the challenged order.
REGISTER, Associate Justice, concurs.