## WILLIAMSON v. PLYMOUTH CITRUS PRODUCTS.

Industrial Commission.

February 6, 1953.

Robert C. Wright, Apopka, and Lester Harris, Orlando, for claimant.

J. Thomas Gurney, Orlando, for employer and insurance carrier.

ROBERT L. HODGES, Deputy Commissioner.

This claim came on for further hearing on a petition for modification of an order I entered on October 1, 1951 denying the claimant compensation and other benefits—which order was appealed and affirmed by the full commission on December 17, 1951. The petition, while it does not bear a "Filed" mark, was apparently received by the commission in Tallahassee on November 27 or 28, 1952.

Objections to the petition for modification have been filed by the employer, as follows: (1) it was not filed within a year from the time when the claim was rejected, as required by statute, my order of denial having been entered on October 1, 1951, (2) it fails to state a change of condition on which the commission may modify its order, (3) it fails to allege a "mistake of facts" on which the commission may modify its order, (4) the commission is without authority to reopen and review a rejected claim wherein no payment of compensation was ever made, and (5) for other good and sufficient reasons.

Regarding the first objection, that the petition was not filed within a year from the time when the claim was rejected by my order of October 1, 1951, it seems to me that the statute requires such petition for modification to be filed within a year from the date of the *commission's* order affirming my order. My order of October 1, 1951 did not become final by lapse of time, but became so only with the order of the full commission dated December 17, 1951. Had there been no review of my order by the full commission, it would have become final seven days after it was filed with the commission in Tallahassee and, in my opinion, the one-year period would run from that date. Since, however, an appeal was taken to the full commission, it is my opinion that the one-year period must be reckoned from the date of the order of the full commission—and the claimant has therefore filed his petition for modification within the time required by law.

The second ground, that the petition fails to state a change of condition, etc., will not be considered as it has no application to the facts disclosed by the record.

The third ground, that "the petition fails to allege a mistake of facts upon which the commission may modify its order," does require consideration, as it goes to the merits of the case. The pertinent portion of section 440.28, Florida Statutes 1951, pro-

vides that an order or award may be amended "because of a mistake in a determination of fact." An examination of the testimony and evidence shows that more evidence was required of the claimant—to establish that he was injured by accident arising out of and in the course of his employment—than the law required of him. My order was based on an assumption and finding that in order for him to show a compensable claim he must show that during the course of his employment he slipped, fell, or through the application of some external force to his body, received an injury. This misconception as to what the claimant was required to prove before he showed that he was injured by an accident resulted from the ruling of our Supreme Court in McNeill v. Thompson, 53 So. 2d 868, and cases therein cited.

In the light of the holding of our Supreme Court in Bonnie Gray v. Employers Mutual Liability Ins. Co. (not yet reported because scheduled for rehearing) I have no doubt that the rulings in the McNeill and similar cases mislead many of those charged with the administration of the workmen's compensation law. Had it not been for the McNeill and other cases the added burden of proof to which I have referred would not have been imposed on compensation claimants, nor would it have been imposed on the claimant in this case.

The Court in the Bonnie Gray case does not appear to overrule McNeill v. Thompson and cases therein cited, but it does admit that perhaps there was an unfortunate use of language in the prior cases, and returned to the concept of the Act which prevailed generally prior thereto, namely that a claimant does not have to slip, fall or have a misstep, or that sort of thing, to show a compensable injury. It emphasizes that in arriving at whether or not there has been an accident within the meaning of the Act it is the unexpected result rather than the unexpected cause which should be considered when a workman is injured in the course of his employment.

From what has been said it might be argued in this case that there has been both a mistake in a determination of fact by the commission and in the application of the law to the facts. Under section 440.28, however, we must confine ourselves only to the question whether there has been a mistake in a determination of fact. Our Supreme Court in Rogers v. Barrett, 46 So. 2d 490, said:

> The sole question argued on this appeal is whether or not the plaintiff was the employee of the defendant within the meaning of the Workmen's Compensation Act, F.S.A. § 440.01 et seq., the defendant

contending that the evidence showed, as a matter of law, that the plaintiff was so employed by him.

The question whether an injured workman occupies the status of employee, so as to bring him within the coverage of the statute, is ordinarily one of fact. It is only where the facts are conceded or undisputed, and there is no dispute as to the inferences to be drawn therefrom, that their legal significance is a matter of law to be determined by the court.

There can be no doubt in my opinion that when the above rule is applied to the facts in this case, there is a dispute as to the inferences to be drawn from such facts and, consequently, whether or not the claimant sustained an injury by accident arising out of and in the course of his employment is a question of fact.

In Guebara v. Inland Steel Co. (Ind. App.), 95 N. E. 2d 714, it is said: "An act or circumstance is none the less a fact merely because it may also be reached or considered as a conclusion of law . . . It has been said that an ultimate fact is the final or resultant fact that has been reached by the process of logical reasoning from the details or probative facts." In Kline v. Kiehl (Pa. Superior Ct.), 43 Atl. 2d 616, it is held—"The finding of the board that there was no causal connection between the accident and the employee's death was a finding of fact." In Revilak v. Coca-Cola Co. (Pa. Superior Ct.), 33 Atl. 2d 287, it was held that the finding of the workmen's compensation board that a claimant had not sustained the burden of proving that the death of her husband resulted from an accident and not from natural causes was a pure finding of fact. In Corrento v. Ventresca (Pa. Superior Ct.), 19 Atl. 2d 746, it is said at page 748: "It is for the workmen's compensation board to determine whether a party to a compensation proceeding has sustained the burden resting on him, and their finding that he has not, is a pure finding of fact." In Schulte v. Grand Union Co. (St. Louis Ct. of App.), 43 S.W. 2d 832, it was held at page 833 that the commission's finding that there was an accident as defined by the compensation law and the finding that it arose out of and in the course of employment were findings of fact and not conclusions of law. See also Lulich v. Chevrolet Motor Co. (Mo.) 40 S.W. 2d 601, Wilson & Co. v. Ind. Comm. (Okla.), 298 Pac. 271, and Probst v. St. Louis Basket & Box Co. (St. Louis Ct. of App.), 52 S. W. 2d 501.

It is my opinion and conclusion that when I found from the testimony and evidence in this case that claimant was not injured by accident arising out of and in the course of his employment on June 18, 1951 so as to entitle him to compensation

and other benefits under the Act and when said finding was sustained on appeal by the full commission, there was a mistake in a determinination of fact within the meaning of the Act calling for a modification of the order sought to be modified.

The employer's fourth and final specific objection, that the commission is without authority to reopen and review a rejected claim where no payment of compensation has ever been made, overlooks the provision of section 440.28 which authorizes the commission, at any time prior to one year after the rejection of a claim, to review a compensation case in accordance with the procedure prescribed in section 440.25, and may then issue a new compensation order, etc.

The testimony taken in connection with the petition for modification shows that claimant reached maximum recovery in the opinion of Dr. Richard H. Walker, Orlando orthopedic surgeon, on May 23, 1952, with a permanent partial disability of between 30% and 35% to the body as a whole, and that thereafter he was able to do light work but not manual labor. He testified that he had worked only 6 weeks and it appears that this was after he reached maximum recovery. The testimony in the record shows that he was totally disabled from June 18, 1951, the day of injury, until he reached maximum recovery on May 23, 1952, and that his average weekly wage was such as to entitle him to compensation at a rate of $22 weekly during this period. The record shows that as a result of his injury he incurred a bill with the Orange Memorial Hospital in Orlando in the sum of $532.61 and that Dr. Walker's bill for medical services is in the sum of $450. The employer objects to the bill as in excess of the medical fee schedule fixed by the commission and I find that it does exceed said schedule in the amount of $100, and the bill should be allowed only to the extent of $350.

I therefore find as follows: (1) that my order herein dated October 1, 1951 should be modified, and that claimant was injured by accident arising out of and in the course of his employment on June 18, 1951 in the manner described in that order, (2) that he is entitled to be paid compensation for temporary total disability from June 22, 1951 to May 23, 1952 at a rate of $22 weekly, (3) that he is entitled to be paid compensation for permanent partial disability of 32.5% from May 23, 1952 for a period of 113¾ weeks at a rate of $22 weekly, (4) that he is entitled to have his above-described hospital bill paid, (5) that he is entitled to have $350 paid on Dr. Walker's bill, (6) that he employed Robert C. Wright, Esq., Apopka attorney, to represent him in connection with the

first hearing on his claim culminating in the aforesaid order and is entitled to have Mr. Wright paid a reasonable fee, which I find to be the sum of $200, and (7) that subsequent to the date of that order he employed Lester Harris, Esq., Orlando attorney, to represent him herein and I find that Mr. Harris should be allowed the sum of $200 for legal services rendered.

It is therefore ordered: (1) that the employer, Plymouth Citrus Products Cooperative, and the insurance carrier, Employers Insurance Co. of Alabama, pay to claimant, Joseph P. Williamson, compensation for temporary total disability for the period and at the rate set forth in the above findings, and that such compensation shall be paid in a lump sum as it has accrued, (2) that the employer and carrier pay claimant compensation for permanent partial disability from May 23, 1952 for a period of 113¾ weeks at a rate of $22 weekly, and that so much of said compensation as has accrued shall be paid in a lump sum and payments continued until all of such compensation for permanent partial disability has been paid in full, (3) that the employer and carrier pay the bill of the Orange Memorial Hospital in the sum of $532.61 and $350 on the bill of Dr. Richard H. Walker, and (4) that the employer and carrier pay to Robert C. Wright, Esq., the sum of $200 and to Lester Harris, Esq., a like sum of $200 for legal services rendered claimant herein.