64 So.2d 650 (1952)
GRAY
v.
EMPLOYERS MUT. LIABILITY INS. CO. et al.
Supreme Court of Florida, Division B.
November 14, 1952.
On Rehearing April 24, 1953.
M. Dudley Burton, Miami, for appellant.
Brown, Dean & Hill, Miami, for Employers Mut. Liability Ins. Co.
Rodney Durrance, Tallahassee, for Florida Industrial Commission.
On Rehearing en Banc April 24, 1953.
ROBERTS, Justice.
This is an appeal in a workman's compensation case in which the appellant sought compensation for an injury occurring in the following manner: The appellant was employed as a waitress in a restaurant and, as a part of her duties, was required to cook waffles. The waffle batter was kept in a five-gallon can and was stored on the bottom shelf of the refrigerator until needed. Ordinarily, the chore of lifting the five-gallon can from the refrigerator and transferring a portion of the batter to a smaller container was performed by a bus boy; the appellant did, however, on occasion and in the absence of a bus boy, perform this work herself. In January of 1951, the appellant picked up the can of waffle batter and suffered an injury to her right arm. She reported the injury to the head waitress, but did not lose any time from work, nor see a doctor, as she thought "it would cure itself." Later, on April 6, 1951, she was again obliged to lift the can of waffle batter and this time felt a sharp pain in her right arm and was unable to hold the can. She immediately sought the services of a doctor and was given a series of deep X-ray, and other treatments, and was able to return to work on April 30, 1951.
*651 The Deputy Commissioner found that appellant was temporarily totally disabled from April 9, 1951, to April 30, 1951. He denied compensation, however, on the ground that there was no "accident" preceding the injury; that appellant did not "slip, fall or make a mis-step," and that, therefore, the appellant's claim was not compensable, since "the injury itself cannot suffice for, or constitute, the accident", citing Brooks-Scanlon, Inc., v. Lee, Fla., 44 So.2d 650, and Le Viness v. Mauer, Fla., 53 So.2d 113. The order of the Deputy Commissioner was affirmed by the Full Commission and, in turn, by the Circuit Court in and for Dade County.
The statement that "the injury itself cannot suffice for, or constitute, the accident", appearing in the Brooks-Scanlon case, supra, and a few other opinions of this court, was perhaps an unfortunate use of language. It was not intended that such statement should be construed as requiring a showing of an unexpected cause of the injury, such as a slip, fall or misstep; it was intended only to require the claimant to make a showing of some event or circumstances connected with his work to which his injury can be directly attributed, in accordance with the rule that the claimant is required to show that the accident or injury happened not only in the course of claimant's employment but arose out of it. Travelers Ins. Co. v. Taylor, 147 Fla. 210, 3 So.2d 381.
Thus, in the Brooks-Scanlon case, supra, where the claimant was working as a laborer at a sawmill, lifting boards and "at 4:00 in the afternoon placed his hand on the pit of his stomach, doubled up, worked for one minute and fell to the ground" with a cerebral hemorrhage, there appeared to be no direct causal connection between the work being performed and the injury sustained; thus, the claimant failed to carry his burden of showing that the injury arose out of his employment. Similarly, in Le Viness v. Mauer, Fla., 53 So.2d 113, the claimant was digging a footing for a house and experienced a sharp shooting pain in his chest. These pains continued intermittently for eight days and, on the ninth day, he sustained a coronary thrombosis. Again, there was a failure to prove a direct causal connection between the employment and the injury. The same failure of proof existed in the cases of Cleary Bros. Const. Co. v. Nobles, 156 Fla. 408, 23 So.2d 525, and City of Tallahassee v. Roberts, 155 Fla. 815, 21 So.2d 712, relied upon by appellees in support of their contention that appellant was not injured "by accident." The cases of McNeill v. Thompson, Fla., 53 So.2d 868, and Peterson v. City Commission, City of Jacksonville, Fla., 44 So.2d 423, are much closer cases than those heretofore discussed, but could have been decided on the same premise.
We wish to make clear, however, that we do not interpret the Workmen's Compensation Law, F.S.A. § 440.01 et seq., as requiring that an injury "by accident" proceed from an unexpected cause. Section 440.02(19) of the law defines "accident" as "an unexpected or unusual event, happening suddenly." The Thorndike-Barnhart Dictionary defines "event" as "1. a happening, 2. result; outcome." To like effect are the definitions given in The Oxford English Dictionary and Bouv. Law Dict., Rawle's Third Revision, p. 101. It is enough, then, if there is an unexpected result, even though there was no unexpected cause, such as a slip, fall or misstep, in order to constitute an "accident" within the meaning of the Workmen's Compensation Law; and insofar as the McNeill and Peterson cases, supra, hold that an injury is not compensable if it happens while the claimant is performing his ordinary work in the usual manner, these decisions are hereby modified, and we re-affirm the rule laid down in Duff Hotel Co. v. Ficara, 150 Fla. 442, 7 So.2d 790, that an unexpected injury received in the ordinary performance of a duty in the usual manner is an injury "by accident" within the purview of the Workmen's Compensation Law, without the showing of anything fortuitous.
Thus, in Crawford v. Benrus Market, Fla., 40 So.2d 889, the claimant was unloading meat from a truck when the weight of the meat pulled him suddenly forward, and he felt something snap in his lower back. And in Charles A. Stewart Co. v. Dobson, 153 Fla. 693, 15 So.2d 481, the claimant *652 suffered a back injury when attempting to pick up and load a field box of citrus fruit on a moving truck. In common parlance, both of these mishaps would certainly be termed "accidents," and this court properly held that the injuries in each case were compensable. It is the unexpected and unintentional effect of the strain or exertion that is covered by the Workmen's Compensation Law as an injury "by accident," and a literal showing of an "accident" such as a slip, fall or misstep is not a prerequisite to recovery.
In the instant case, it was clearly shown that the appellant received an injury to her arm as the unexpected result of attempting to lift the heavy five-gallon can of waffle batter from the bottom of the refrigerator. It was, therefore, an injury "by accident" within the meaning of the Workmen's Compensation Law, and it was error to deny her compensation therefor.
Accordingly, the judgment appealed from should be and it is hereby reversed and the cause remanded for further proceedings consistent with this opinion.
Reversed and remanded.
SEBRING, C.J., and MATHEWS and DREW, JJ., concur.

On Rehearing
PER CURIAM.
On rehearing granted, we have reconsidered this cause in the light of briefs filed and further oral argument at the bar of this Court, and have determined to adhere to our former opinion.
ROBERTS, C.J., and TERRELL and SEBRING, JJ., concur.
HOBSON, J., concurs specially.
THOMAS, MATHEWS and DREW, JJ., dissent.
HOBSON, Justice (concurring specially).
I am constrained to agree with and to concur in the original opinion by Mr. Chief Justice ROBERTS because the interpretation which he places upon the legislative definition of an "accident" contained in Section 440.02(19) cannot be characterized as a strained construction when considered in the light of the purposes to be accomplished by the Workmen's Compensation Act; the presumption declared in Section 440.26(1) that, absent substantial evidence to the contrary, "the claim comes within the provisions of this chapter"; and our repeated pronouncements that the Act should be construed liberally and all doubts resolved in favor of the claimant.
Moreover, it is my view that a careful analysis of Section 440.02(19) discloses a legislative intent that every injury arising out of and in the course of employment should be held compensable if the injury was preceded by or simultaneous with an "event" which happened suddenly and was unexpected or unusual, unless, as expressly excepted by the statute, it be "A mental or nervous injury due to fright or excitement only or disability or death due to the accidental acceleration or aggravation of a venereal disease or of a disease due to the habitual use of alcohol or narcotic drugs * * *." Every injury is the result of an unexpected and unusual event, happening suddenly, unless it is deliberately self-inflicted or designedly imposed by another. Thus, in the instant case, the claimant knew that the five-gallon can of waffle batter was heavy, but she had no reason to suspect from experience or otherwise that the lifting of the can and the pouring of batter from it into another receptacle would result in a disabling injury to her. Her injury was, then, preceded by, or was simultaneous with, an "event" which happened suddenly, to wit, the over-exertion of the muscles of her arm; and it cannot be gainsaid that this was unexpected and unusual. Consequently, the injury which she sustained should be held to be compensable.
MATTHEWS, Justice (dissenting).
This is an appeal from the order of the Circuit Judge affirming the order of the Industrial Commission which had affirmed *653 the order and findings of a Deputy Commissioner.
The claimant was seriously injured and the primary question to be determined is whether or not the lifting of a can of waffle batter was an accident which produced the injury. The Deputy Commissioner found from the evidence "the lifting of the can of waffle batter was one of the occasional duties of the claimant over a period of four years." In support of his findings, the Deputy Commissioner cited the cases of Brooks-Scanlon, Inc., v. Lee, Fla., 44 So.2d 650, and Le Viness v. Mauer, Fla., 53 So.2d 113.
The uncontradicted testimony was that the claimant had worked at this same place for four and one-half years. There was a five-gallon can from which she got waffle batter to make waffles. When not in use this can was on the bottom floor of the refrigerator. In order to use the waffle batter it was necessary to pull the can forward and then lift it into a position to pour some of the batter into a smaller pitcher. In January of the same year she had performed this operation of pulling the can of waffle batter forward, lifting it and pouring some into a pitcher. She felt some strain at that time but she did not require any medical attention and she did not lose any time from work. She did mention the fact to the head waitress but to no one else. On April 6th, in performing this same operation of pulling the can forward on the bottom floor of the refrigerator and lifting it she felt a sharp pain in her arm and dropped the can back down. The can weighed between 10 and 15 pounds. This five-gallon can had a handle at the top. In lifting the can, the claimant put her left hand on the handle and her right hand on the bottom of the can. As a waitress she was called on to cook waffles and in order to cook waffles she had to get the waffle batter out of the Frigidaire. In response to the question: "How many thousands of waffles have you cooked?" the claimant answered: "That would be hard to say. I won a contest two years on waffles, selling the most waffles, if that would give you any idea." If the bus boy was there it was his duty to lift the can. On this particular morning he was not there. On this occasion she went through the operation of lifting the waffle batter can because customers were there wanting waffles. After telling that it was the bus boy's duty to lift the waffle batter can when he was there, the following questions were asked and answers given before the Deputy Commissioner:
"Q. How many times did you lift it in a day? A. Not very many.
"Q. Two times a day? A. Maybe one or two times a day. Early in the morning I usually have to lift it.
"Q. At least one time a day? A. Not every day. That's the bus boy's duty, if he's there, and I couldn't find him that morning.
"Q. You have lifted that can of waffle batter many, many times, haven't you? A. I have lifted it many times, sir, during four and a half years."
Subsection (6) of F.S. § 440.02, F.S.A., defines the term "injury" as follows:
"The term `injury' means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury."
If the Act stopped there, we would be left to determine the meaning of the word "accident", but the Legislature left no room for doubt, and in F.S. § 440.02(19), F.S.A., defined the word "accident" as: "`Accident' shall mean only an unexpected or unusual event, happening suddenly." (Emphasis supplied.)
It is seriously contended that the claimant received an injury to her arm as the "unexpected result" of attempting to lift the can of waffle batter and she, therefore, suffered an injury "by accident" within the meaning of the Workmen's Compensation Law.
It may be, as a matter of public policy, that the test should be "an unexpected result" of an expected and usual event, but the Legislature has not so provided. It has provided that the "event" must be "unexpected or unusual". We cannot amend the statute by striking therefrom the word "accident" or the legislative definition of *654 the word "accident". We cannot substitute the word "result" for the word "event". An amendment to an Act must be by the Legislature and not by judicial construction. In passing upon the Act, we must construe and apply the same as it was written and enacted by the Legislature and not as we think it should be.
In construing a statute where words are defined, the legislative definition controls as against all other definitions. Greenleaf & Crosby Co., Inc. v. Coleman, 117 Fla. 723, 158 So. 421; First National Bank of Miami v. Florida Industrial Commission, 154 Fla. 74, 16 So.2d 636. It is the duty of the Court to give effect to plain and unambiguous language. Voorhees v. City of Miami, 145 Fla. 402, 199 So. 313. Where the words of the statute are plain and definite and without ambiguity, no interpretation or construction is necessary because by the use of such words, the Legislature itself has fixed and determined the legislative intent. Fine v. Moran, 74 Fla. 417, 77 So. 533; Taylor v. State, 117 Fla. 706, 158 So. 437; State ex rel. Bie v. Swope, 159 Fla. 18, 30 So.2d 748; Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693, L.R.A. 1918E, 639. It cannot be presumed that the Legislature used the word "accident" as it did in this statute and then went further and defined the word "accident" for no purpose. On the other hand, it must be presumed that the Legislature used the word "accident" and specifically defined the word for a purpose, and that was to fix the public policy with reference to workmen's compensation. It is within the sole province of the Legislature to amend this act and it is no doubt desirable that the act be amended by striking out the word "accident" and the definition of the word "accident." Until the Legislature acts, however, we are bound by the statute as it is now written.
In support of his findings the Deputy Commissioner cited two cases hereinabove mentioned. In the case of Le Viness v. Mauer, supra, the claimant was digging a ditch and suddenly experienced a sharp shooting pain in his chest. It was a hot day. The claimant previously had done general carpentry and roofing work. He was not accustomed to this type of work, which not only involved digging ditches but also chopping palmetto roots. After he experienced the first pain, he stopped and rested about 15 minutes. For the next few days he did only light work but continued to suffer with the same kind of pains. He later had a severe pain and sought medical assistance. Tests showed that he had suffered coronary thrombosis. He had never had any symptoms of chest pains or heart trouble before. The Deputy Commissioner awarded compensation upon the theory that an injury had been received by an accident arising out of and in the course of the employment. In reversing the case, this Court said [53 So.2d 114]:
"Authority for the award was based upon Alexander Orr, Jr., Inc., v. Florida Industrial Commission, 129 Fla. 369, 176 So. 172; Davis v. Artley Construction Co., 154 Fla. 481, 18 So.2d 255. Obviously there was no accident preceding the heart attack and we have unequivocally held that the injury itself will not suffice to constitute the accident. We have often construed this statute and have distinguished the cited cases from similar facts as found here. This case is ruled by Cleary Brothers Construction Co. v. Nobles, 156 Fla. 408, 23 So.2d 525; and Brooks-Scanlon, Inc., v. Lee, Fla., 44 So.2d 650, and cases therein cited."
In the other case cited by the Deputy of Brooks-Scanlon, Inc., v. Lee, supra, an award was granted upon the theory that the deceased husband sustained an injury by accident within the meaning of the Workmen's Compensation Act. In reversing the award, this Court cited the case of City of Tallahassee v. Roberts, 155 Fla. 815, 21 So.2d 712, to the effect that to authorize an award:
"* * * there must be an accident preceding the injury. In other words, the injury itself cannot suffice for, or constitute, the accident.
"This case is ruled by our decision in Cleary Brothers Construction Company Nobles, 156 Fla. 408, 23 So.2d 525. This case is distinguished from the several cases cited in Protectu Awning Shutter Company v. Cline, 154 Fla. 30, *655 16 So.2d 342; Davis v. Artley Construction Company, 154 Fla. 481, 18 So.2d 255, by appellee for in those cases we found that there was an accident which preceded the injury."
In the case of McNeill v. Thompson, Fla., 53 So.2d 868, 869, the claimant asserted that he had received an injured spine which consisted of a ruptured inter vertebral disc. There was no dispute that he received such injury. The Court said:
"The sole question we are called on to determine is whether or not he received this injury in an `accident' within the meaning of the Compensation Act."
A full statement of the facts is given in the opinion. The claimant was a foreman of a painting job. It became necessary to move a ladder. He started to lift the ladder and get it out of a hole. As he lifted the ladder out of the hole, he felt a pain in the lower part of his back. He had been accustomed to lifting ladders. It is the usual and expected thing to do in the painting trade. The Deputy Commissioner found that the lifting of the ladder in this particular case was an occurrence of an unusual nature and, therefore, constituted an accident under the terms of the Workmen's Compensation Act. In its opinion this Court noted the fact that the claimant was an experienced painter and was accustomed to lift, raise, move and generally handle ladders of the same length, weight and size of the one he lifted and moved in that case, and then concluded:
"* * * We must, therefore, find that there was no `accident' within the meaning of the Act. * * *"
In the case of Cleary Brothers Construction Co. v. Nobles, supra, the claimant's husband was engaged in unloading a railroad box car containing sacked cement. He was employed as a day laborer and was a large muscular man accustomed to hard physical labor. From all that appears he enjoyed good health. His job was to help place sacks of cement on a hand truck which was rolled to the door of the box car by others, who took the cement from the truck and loaded it on a waiting motor truck. The deceased was assisted by another day laborer. Each one would grab the end of a loaded sack and place it upon the hand truck. About 30 minutes after the deceased went to work, he stopped for a few minutes while a loaded truck pulled away from the box car door and an empty truck backed up to be loaded. During this time the deceased was standing at the car door mopping perspiration from his brow. He suddenly fell forward out of the box car door to the ground. When assistance reached him he was unconscious and in a dying condition. An autopsy showed that the deceased's heart was unusually large. At the time of his collapse he was suffering from nephro sclerosis, a kidney disease, and various heart involvements. According to the expert testimony, the effort exerted by the deceased on the morning of his death, plus the heat in the car, no doubt contributed to rising blood pressure to such an extent that the heart could not work against it and death resulted. The Court held that the deceased did not fall out of the box car as a result of an accident. He did not lose his balance and fall. He was not pushed, knocked or jostled. Prior to the collapse he had not been sick, dizzy or overheated. The judgment of award was reversed.
The appellant strongly relies upon the case of Crawford v. Benrus Market, Fla., 40 So.2d 889. That case is not authority for the contention that if an injury is received because of an unexpected result in lifting a can of waffle batter, it was an injury "by accident." The opinion may be read from one end to the other and we do not find the word "accident" used. In the opinion it is stated, "The Deputy Commissioner found in essence that he was injured November 3, 1944, in the course of his employment, * * *." There was a sharp conflict of evidence on this question. The Court said:
"* * * In a case like this the probity of the evidence is for the Industrial Commission to determine and their finding should not be reversed unless shown to be clearly erroneous. * * *"
In this case there was nothing unexpected or unusual in moving and lifting the *656 can of waffle batter. The moving and lifting of the can was not an "unexpected or unusual event, happening suddenly." The "event" of lifting the can of waffle batter was expected and was usual. The waitress always did this when she needed to cook waffles unless the bus boy was present. She performed this duty once or twice a day, and particularly every morning. She had been doing the same thing for four and one-half years. If the handle to the can of batter had come loose, such might have been an "unexpected or unusual event, happening suddenly." This case is like the case of McNeill v. Thompson, supra. The painter in that case was accustomed to moving and lifting ladders. If, in moving and lifting the ladder, something unusual or unexpected had happened, such as, the breaking of the ladder, knocking a bucket of paint on the painter's head, or any other event which was unusual and unexpected, it might have constituted an accident.
The "event" in this case was the moving and lifting of the can of waffle batter. There was nothing "unusual or unexpected" about the "event". It may be that the result of the moving and lifting produced an injury out of and in the course of the employment. The injury, or result, may have been "unexpected and unusual," but the injury, or result, was not the "event". The happening of an expected or usual "event", such as, the moving and lifting of a can of waffle batter is not an "accident" and because such moving and lifting produced an "unexpected and unusual" injury, or result, cannot make the expected and usual "event" of moving and lifting the can an "accident."
In this case the Deputy Commissioner found from the evidence that "the lifting of the can of waffle batter was one of the occasional duties of the claimant over a period of four years * * *" and "that the claimant did not suffer an injury by accident." The findings of fact of the Deputy Commissioner was fully supported by the uncontradicted testimony of the claimant in this case. There is no basis in the record for disturbing the findings of the Deputy Commissioner. U.S. Casualty Co. v. Maryland Casualty Co., Fla., 55 So.2d 741; Town of Crescent City v. Green, Fla., 59 So.2d 1; and Williamson v. Roy L. Willard, Inc., Fla., 59 So.2d 865.
Whether or not the lifting of the waffle batter can was an occasional duty of the claimant performed over a period of four years was a question of fact, and the only testimony on that question was that of the claimant, hereinabove set forth. There being no conflict upon this question, it was the duty of the Deputy to make a determination and he could have made no other determination. If the evidence was conflicting on this question, but there was substantial evidence to support the finding of the Deputy, then such finding when reviewed by the Full Commission and the Circuit Court and affirmed by each, becomes final. This question was settled in the case of U.S. Casualty Co. v. Maryland Casualty Co., supra, in an opinion by Mr. Justice Hobson in which it was said [55 So.2d 745]:
"It is our view that under existing law the full Commission when reviewing a matter which has been heard by a deputy commissioner should give to his findings of facts about the same weight that this Court is required to give to the findings of facts made by a Chancellor, and the full Commission should not reverse the findings of facts made by a deputy commissioner unless it is made to appear that those findings of facts are not sustained by competent, substantial evidence.
"* * * We find in the record competent, substantial evidence which supports the findings of facts made by the Deputy Commissioner. Consequently, our judgment must be one of reversal."
For this Court to now hold that the Deputy, the Full Commission and the Circuit Judge were wrong in their decision on this question of fact is to repudiate our holding in U.S. Casualty Co. v. Maryland Casualty Co., supra, and to make this Court a trier of the facts, or appeals in such cases to be a trial de novo before this Court.
*657 The Deputy Commissioner, the Full Commission and the Circuit Judge followed the more recent decisions of this Court in holding that there was no accident, within the meaning of the Workmen's Compensation Law, which produced the injury. They should not be reversed because they followed the law as it has been established by the opinions of this Court.
The judgment appealed from should be affirmed.