416 P.2d 164

Ralph YRIBAR, Carlos Yribar, Cornelia Muniosguren, Milagros Etchepare, Segunda Yribar, Juan Muniosguren, Richard Uranga and Damiana Muniosguren, Contestants of the Last Will and Testament of Felipe Yribar, Deceased, Plaintiffs-Appellants and Cross-Respondents,

v.

H. B. FITZPATRICK and Oliver Davis, Proponents of the Last Will and Testament of Felipe Yribar, Deceased, Defendants-Respondents and Cross-Appellants,

v.

Allan G. SHEPARD, Attorney General, State of Idaho, Intervenor-Respondent and Cross-Appellant.

No. 9684.

Supreme Court of Idaho.

June 22, 1966.

Rehearing Denied Aug. 10, 1966.

**106**

McDevitt & McDevitt, Pocatello, for appellants and cross-respondents.

Furchner, Anderson & Beebe, Blackfoot, for respondents and cross-appellants.

Allan G. Shepard, Atty. Gen., and M. Allyn Dingel, Jr., Asst. Atty. Gen., Boise, for intervenor and cross-appellant.

McQUADE, Justice.

For a complete and detailed account of the facts in this case, see the opinion of this court in Yribar v. Fitzpatrick, 87 Idaho 366, 393 P.2d 588 (1964).

The contestants-appellants, herein referred to as the contestants, are the heirs at law of the deceased, Felipe Yribar. They have contested the admission to probate of the deceased's last will and testament, executed in 1957, and a codicil thereto, executed in 1962. After a trial in the probate court, the contestants appealed to the district court wherein a trial de novo was held.[1] The district court affirmed the admission of the will and codicil to probate but invalidated certain provisions therein. From that judgment the contestants have appealed and the defendants-respondents, the executors of Yribar's estate, herein referred to as the executors, and the intervenor, the Attorney General of the State of Idaho, have cross-appealed.

We shall discuss first the contestants' assignments of error, which are directed generally to the trial court's rulings and instructions to the jury. Contestants, in their amended complaint, alleged that the deceased executed his will under "restraint, undue influence and misrepresentation" on the part of the executors; that the executors "poisoned and prejudiced" the mind of the decedent against the contestants; that the decedent's signature on the will was obtained by the "fraudulent importunities" of the executors while the "decedent's volition was overpowered" and without his understanding of the full meaning of the will; and that, because of advanced age and overindulgence in intoxicating liquors, the decedent's mental abilities were diminished, causing him to execute the will under the "urging, undue influence and misrepresentations" on the part of the executors.

The trial court ruled that as a matter of law the decedent possessed the requisite testamentary capacity at the time he executed the will and codicil and that they were duly published, attested to, and executed according to law. A special interrogatory was submitted to the jury, which asked: "At the time of the execution of the will in question in this case was Felipe Yribar under the undue influence, as the same has been defined to you in these instructions, of Oliver Davis and H. B. Fitzpatrick?" The jury's response was "No," and they also found in favor of the executors and against the contestants, whereupon the trial court affirmed the probate court order admitting the will and codicil to probate.

The contestants urge as error the trial court's withdrawing from the jury the issues of fraud by the executors in procuring the execution of the will and codicil; its limiting the question of undue influence to Davis and Fitzpatrick, whereas the undue influence of William Furchner, the decedent's attorney also should have been submitted; and its ruling as a matter of law that the decedent possessed the requisite testamentary capacity at the time of execution of the instruments and that they were duly authenticated, executed and published and for withdrawing these is-

1. See I.C. § 17-201 and 17-206.

sues from the jury. Clearly, the burden of proving undue influence or fraud in the procurement of the execution of a will is on the contestants. The mere showing of a confidential relationship between the testator and his attorney or the executors named in the will does not raise a presumption of, nor is it a sufficient showing that, undue influence was exercised over the testator in procuring the execution of his will. Swaringen v. Swanstrom, 67 Idaho 245, 175 P.2d 692 (1946).

██ We have reviewed the transcript carefully and have been unable to find any evidence, nor have contestants specified wherein such evidence, if any, could be found in the record which would warrant submitting any of the above issues to the jury. There was no evidence upon which reasonable minds could differ. Nor was there evidence upon which a finding in favor of contestants on these issues could be sustained. The trial court properly withdrew these questions from the jury. Alsup v. Saratoga Hotel, 71 Idaho 229, 229 P.2d 985 (1951). Therefore, contestants' assignments of error relating to the refusal of the trial court to grant their requested instructions to the jury on these issues are without merit.

██ Contestants also urge that the trial court incorrectly defined "undue influence" to the jury. The trial court instructed the jury as follows:

"INSTRUCTION NO. 14

"Undue influence has been, in effect, defined as domination by the guilty parties over the Testator to such an extent that his free agency is destroyed and the will of another person substituted for that of the Testator."

Contestants also allege that Instruction No. 15 conflicts with the foregoing instruction.

"INSTRUCTION NO. 15

"You are instructed that in order to show undue influence it is not necessary to prove circumstances of either actual domination or coercion; that the only positive and affirmative proof required is of facts and circumstances from which undue influence may be reasonably inferred."

These instructions correctly stated the applicable law and no error is contained therein. In re Lunders' Estate, 74 Idaho 448, 263 P.2d 1002 (1953).

██ Contestants also alleged error in the trial court's permitting "caustic, critical and irrelevant" cross-examination of one of the contestants, Ralph Yribar. Ralph Yribar verified the amended complaint in which the allegations as to undue influence, fraud, mistake, etc., were set forth. On cross-examination he was asked if he was able to substantiate these allegations with specific facts. Yribar responded that he could not. Although Yribar had difficulty with the English language, the trial judge protected the witness by repeatedly inquiring of Yribar if he understood the questions propounded by counsel on cross-examination. In addition, an interpreter was employed to aid in arriving at preciseness in propounding questions and relating the witness' answers. Cross-examination of a party as to facts forming the basis of his complaint is permissible and when such witness repudiates the allegations in his complaint or, as Yribar stated, he had no knowledge of any facts to support those allegations, the trial court properly may instruct the jury, as was done here,[2] that such testimony constitutes an admission. Van Meter v. Zumwalt, 35 Idaho 235, 206 P. 507 (1922).

---

2. "INSTRUCTION NO. 28
"The sworn statements of a plaintiff when called as a witness in his own behalf which directly contradicts material allegations of his amended complaint constitute informal judicial admissions on his part and are accorded the quality of prima facie proof and for the purposes of this trial such admissions must be taken as true."

The contestants assign numerous other errors, primarily with regard to the instructions to the jury and the trial court's denial of certain of contestants' requested instructions. We have carefully reviewed the record and find no reversible error contained in the trial court's instructions or in its denial of the requested instructions.

The cross-appeal of the executors and of the intervenor, the Attorney General, questions the correctness of the trial court's invalidation of the following provision of Yribar's will:

"EIGHTH. After paying or setting aside funds for the above-mentioned bequests and for all debts, expenses of administration, taxes, and all other proper charges, I direct that my executors, together with my attorney, pay the remaining balance of the funds of my estate *to some worthy, charitable or public institution or institutions to be selected by my executors and my attorney* acting jointly and in agreement with each other, and I intend that their decisions upon the recipients of such funds shall be final and conclusive upon all persons." (Emphasis added.)

█ Assuming *arguendo* that the executors and the Attorney General are correct in their contention that the language in this provision, together with that of other provisions in the will, is sufficient to establish a charitable trust, we agree with the trial court that the attempted trust nevertheless is invalid for failure adequately to designate a beneficiary. In Hedin v. Westdala Lutheran Church, 59 Idaho 241, 81 P.2d 741 (1938), this court held invalid a trust for "charitable or religious purposes" because the testator "did not designate a preference for any form of religion nor did he specify any institution or individual, nor class of institutions or individuals, to benefit by a distribution of the property mentioned in this paragraph of

his will." 59 Idaho at 250, 81 P.2d at 745.

In In re Eggan's Estate, 86 Idaho 328, 386 P.2d 563 (1963), this court reaffirmed the rule announced in *Hedin* but distinguished it factually. In *Eggan* the beneficiary was designated by the phrase, the "youth of this area." This court found no problem in ascertaining the actual intention of the testator. The opinion continued:

"It has been stated that the requirement of definite designation of the class of the beneficiaries is in order that the courts can be certain that the testator's intendments and purposes are being carried out. 2A Bogert, Trusts and Trustees, pg. 18, § 363. The testator's purposes here and by him intended to afford recreational opportunities for the youth of the area, and are sufficiently expressed to fulfill the requirements of definiteness, 2A Bogert, Trusts & Trustees, pg. 174, § 378; See Annot. 163 A.L.R. 784." 86 Idaho at 340, 386 P.2d at 571.

█ The "beneficiary" under Yribar's will—"some worthy, charitable or public institution or institutions"—is no more definite than was the "beneficiary" in the Hedin will—"charitable or religious purposes." What was intended to be designated by the term "public institution" is left to conjecture. It would be impossible for the trustees to effectuate Yribar's intent because his intent is unascertainable. The intended beneficiaries are left to the unbridled discretion of the trustees. As was stated in *Hedin*:

"The testator sought to invest his executor and trustee with unlimited power of selection of the beneficiary, or beneficiaries, of his bounty, so long as it was expended for religious or charitable purposes. * * * Such testamentary efforts have been likened unto powers of attorney to make wills, which the law does not permit."

The executors and Attorney General urge that with the passage of I.C. § 67–1401

(4) [3] the attorney general has been given supervisory powers over charitable trusts to ensure that such trusts are executed according to the settlor's intent and that, therefore, one of the fears expressed in *Hedin*—that "much mischief and evil would result in adopting in Idaho a doctrine which would uphold a will placing the disposal of a testator's property beyond the supervision of the courts"—is thereby overcome. This argument, however, begs the question—namely, what was the testator's intent? The generalization "some worthy, charitable or public institution or institutions" does not satisfy the requirement that the beneficiary of a trust be designated with reasonable cer-

tainty. There is no limitation as to any class or type of charity or public institution which Yribar intended his bequeath to benefit. Cf. In re Eggan's Estate, supra. The Attorney General is in no better position to enforce this provision according to Yribar's intent than are the courts or the executors.

We conclude, therefore, that the trial court correctly invalidated this provision of the will for failure adequately to designate the beneficiary or beneficiaries.

The judgment is affirmed.

No costs allowed.

McFADDEN, C. J., and TAYLOR, SMITH and SPEAR, JJ., concur.

3. "67-1401. Duties of attorney-general. —It is the duty of the attorney-general:

\* \* \* \* \*

"4. To supervise nonprofit corporations, corporations, charitable or benevolent societies, person or persons holding property subject to any public or charitable trust and to enforce whenever necessary any noncompliance or departure from the general purpose of such trust and, in order to accomplish such purpose, said nonprofit corporations, corporations, charitable or benevolent societies, person or persons holding property subject to any public or char-

itable trust are subject at all times to examination by the attorney-general, on behalf of the state, to ascertain the condition of its affairs and to what extent, if at all, said trustee or trustees may have failed to comply with trusts said trustee or trustees have assumed or may have departed from the general purpose for which it was formed. In case of any such failure or departure, the attorney-general shall institute, in the name of the state, any proceeding necessary to enforce compliance with the terms of the trust or any departure therefrom."